UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN GARRETT SMITH,

               Petitioner,

     v.

RON HAYNES,

               Respondent.

CASE NO. 3:19-cv-05394-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: June 5, 2020

     The District Court has referred this action to United States Magistrate Judge J. Richard Creatura. Petitioner John Garrett Smith, proceeding *pro se*, filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court judgment and sentence. *See* Dkt. 7.

     Petitioner seeks habeas relief from his conviction by jury verdict of second-degree attempted murder and second-degree assault. Dkt. 7. Petitioner raises four grounds for relief. *Id.* Petitioner has presented his claims to the state courts on direct appeal and through multiple collateral attacks. After previously dismissing petitioner's first federal petition without prejudice for failure

1    to exhaust, the Court now concludes that petitioner's claims lack merit and the state court's

2    adjudication was not contrary to, or an unreasonable application of, clearly established federal

3    law. Petitioner's first ground for relief that the trial court lacked jurisdiction fails to state a

4    federal constitutional ground for relief and is not supported by any state law requirements. In

5    Ground 2, petitioner alleges that the prosecution failed to present exculpatory evidence, but he

6    has failed show that evidence was falsified or that the prosecution was aware of any alleged

7    falsification and failed to provide that information to petitioner. In Ground 3, petitioner alleges

8    that the police unlawfully acquired his cell phone, but he fails to state a constitutional ground for

9    relief and his claims are refuted by the record. In Ground 4, petitioner alleges that he is actually

10    innocent, but offers no evidence to support his allegations, and merely challenges the sufficiency

11    of the evidence presented at trial. Therefore, the undersigned recommends that the petition be

12    denied and a certificate of appealability not be issued. The Court also recommends that all

13    pending motions be denied as moot. *See* Dkt. 39.

14    **I.    Background**

15        A.  <u>Factual Background</u>

16        On December 3, 2014, in a Clark County Superior Court bench trial, petitioner was found

17    guilty of attempted second-degree murder and second-degree assault. *See* Dkt. 16-1 at 937.

18    Petitioner was sentenced to 144 months confinement on January 30, 2015. *See id*. at 937-45. The

19    Washington Supreme Court summarized the facts of petitioner's case as follows:

20        John Garrett Smith and Sheryl Smith were married in 2011. On the evening of June
            2, 2013, the Smiths engaged in an argument at their home that turned violent. Mr.

21        Smith punched and strangled Mrs. Smith to the point of unconsciousness and then
            left their home. When Mrs. Smith regained consciousness, her eyes were black and

22        swollen shut, her face was swollen and bleeding, and she had difficulty breathing.
            Mrs. Smith was hospitalized for several days due to the severity of her injuries,

23        which included a facial fracture and a concussion. For months after the assault, she
            suffered severe head pain, double vision, nausea, and vertigo.

24

Mrs. Smith's memory of the attack at the time of trial was limited; she recalled:

> I'm being strangled. Garrett's on top of me. My face is being punched. I feel like I'm in a very dark place inside of my head, and three punches, and I'm being called a fat bitch, and I thought I was going to die.

Other evidence filled in Mrs. Smith's memory gaps, including her written statement, which was read into the record. Additionally, there was a recording made of the incident. During the incident, Mr. Smith used the home's landline cordless phone to dial his cell phone in an attempt to locate the cell phone. The cell phone's voice mail system recorded the incident because Mr. Smith left the landline open during his attempt to find his cell phone. This voice mail contained sounds of a woman screaming, a male claiming the woman brought the assault on herself, more screams from the female, name calling by the male, and the following exchange:

> MALE: There, are you happy now?
>
> (Woman screaming.)
>
> MALE: You brought this shit on. I have never done this. You and your fucking Mexican. Fuckcocking three-timer. You're not going to get your (inaudible) three check.
>
> ....
>
> WOMAN: Get away.
>
> MALE: No way. I will kill you.
>
> WOMAN: I know.
>
> [More female screaming and name calling by the male followed until the recording ended.]

At trial, the female in the recording was identified as Sheryl Smith and the male as the defendant, John Garrett Smith. Mr. Smith fled the scene without his cell phone after strangling Mrs. Smith to unconsciousness. The cell phone ended up in the possession of Skylar Williams, Mrs. Smith's daughter and Mr. Smith's stepdaughter, after Ms. Williams returned to the house and helped her mother complete a 911 call.

On the 911 call, Mrs. Smith can be heard gasping and pleading for help. She reported being unable to see. Mrs. Smith explained to the 911 operator that she had been "beat to a pulp" by John Garrett Smith. Ms. Williams, who had just arrived home, then grabbed the phone and told the 911 operator that her mother's face is

"like ten times the size of normal and gushing blood" and that "she can't open her eyes because her face is so swollen." Following the arrival of the police and paramedics, Mrs. Smith received medical care and was transferred to a hospital.

While at the hospital, Ms. Williams looked at Mr. Smith's cell phone and saw a missed call and a voice mail from the family landline left around the time of the incident. She listened to the voice mail and then played it for an officer. The police, after hearing the voice mail, seized the cell phone and executed a search warrant on it. While at the hospital, Ms. Williams received multiple calls from Mr. Smith. During one of those calls, Mr. Smith indicated that he thought he should book a flight and leave town. Ms. Williams told him to meet her at the house instead, but her plan was to send the police to meet Mr. Smith.

The police arrested Mr. Smith at the home. At that time, he denied any physical altercation with Mrs. Smith. But the next morning, Mr. Smith asked a detective, "Is she going to make it?" despite not receiving any information from the detective about Mrs. Smith's injuries.

The State charged Mr. Smith with attempted first degree murder, attempted second degree murder, first degree assault, and second degree assault for the incident occurring with Mrs. Smith on June 2, 2013. Prior to trial, Mr. Smith filed a motion to suppress the audio recording found on his cell phone that captured part of the incident, including him threatening to kill his wife. Mr. Smith argued that Ms. Williams had unlawfully intercepted the recording pursuant to the privacy act, RCW 9.73.030, when she listened to the voice message left on his phone. The trial court denied the motion to suppress, ruling that Ms. Williams's conduct did not constitute an interception. The court also ruled that RCW 9.73.030(1)(b), which, . . . prohibits the recording of private conversations without consent, did not apply because the information was inadvertently recorded, noting that "[a]t the time this information was recorded, nobody was trying to intercept or record what was occurring."

The case proceeded to a bench trial. The trial court found Mr. Smith guilty of attempted second degree murder, second degree assault, and the related special allegations of domestic violence, but acquitted him of the remaining counts and the aggravator. Mr. Smith was sentenced to a standard range sentence of 144 months.

Dkt. 16-2, pp. 386-90 (internal citations and footnotes omitted); *State v. Smith*, 189 Wash. 2d 655, 657–61 (2017).

B. <u>Procedural Background</u>

1. *Direct Appeal*

Petitioner challenged his judgment and sentence on direct appeal. *See* Dkt. 16-1 at 1086-1154. The Washington Court of Appeals affirmed petitioner's second-degree assault conviction and reversed and remanded petitioner's attempted second-degree murder conviction. Dkt. 16-2 at 38-58. The State sought discretionary review by the Washington Supreme Court *See id.* at 60-108. The Washington Supreme Court granted the State's petition for review and, on November 22, 2017, the Washington Supreme Court reversed the Washington Court of Appeals decision and reinstated petitioner's attempted second-degree murder conviction. *Id.* at 386-98. The Washington Court of Appeals issued its mandate on January 18, 2018. *Id.* at 421. The United States Supreme Court denied certiorari on October 9, 2018. *Smith v. Washington*, 139 S.Ct. 324 (2018).

2. *Personal Restraint Petitions*

Petitioner filed multiple collateral attack motions and personal restraint petitions ("PRPs") seeking state post-conviction relief. *See* Dkt. 15; Dkt. 16-2 at 424-79, 505-38; Dkt. 16-3 at 2-29, 93-107, 110-87; Dkt. 16-4 at 2-55, 106-31, 145-47. Because respondent does not allege that the petition is untimely or unexhausted, the Court finds that it is not necessary to detail petitioner's state collateral attacks.

3. *Federal Petitions*

Petitioner filed a previous federal habeas petition that was dismissed without prejudice due to petitioner's failure to exhaust his claims. *See Smith v. Haynes*, 3:17-cv-06019-BHS (W.D. Wash.). On May 8, 2019, petitioner initiated his second federal petition. Dkt. 1. In his amended petition (Dkt. 7, "the petition"), petitioner raises the following four grounds for relief:

1.  "Ultra-vires restraint due to void ab initio charge that failed to acquire ratification of indictment[.]" Dkt. 7 at 5.

2.  *"Brady* violations – refusal to acknowledge suppression of exculpatory evidence." Dkt. 7 at 7.

3.  "Theft of petitioner's liberty is a criminal stalking horse concealing thefts of his property (physical and intellectual)." Dkt. 7 at 8.

4.  "Actual innocence." Dkt. 7 at 10.

Dkt. 7.

On September 17, 2019, respondent filed an answer and memorandum of authorities. Dkt. 15. In the answer, respondent asserts that petitioner has not stated constitutional claims and the state court's adjudication of the grounds raised in the petition was not contrary to, or an unreasonable application of, clearly established federal law. *Id*. Petitioner filed a traverse on September 24, 2019. Dkt. 17. The case was stayed while petitioner pursued an interlocutory appeal and became ready for the Court's consideration on March 13, 2020. *See* Dkt. 25, 37. On May 4, 2020, Magistrate Judge David W. Christel entered an order recusing himself from all further proceedings. Dkt. 41. The same day, the case was reassigned and referred to the undersigned magistrate judge. *See id.* (The case remains assigned to District Judge Ronald B. Leighton.).

**II.    Discussion**

Respondent maintains that petitioner has not alleged constitutional violations and the state courts' adjudication of the grounds raised in the petition was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 15.

A. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

1    it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

2    U.S. at 407).

3         The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas

4    courts to presume the correctness of state courts' factual findings unless applicants rebut this

5    presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of

6    state court decisions under §2254(d)(1) is "limited to the record that was before the state court

7    that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

8         The Court notes a state court adjudicates a claim "on the merits" for purposes of §

9    2254(d) when it decides the petitioner's right to relief based on the substance of the federal

10   claim, rather than on another basis precluding state court merits review. *Runningeagle v. Ryan*,

11   686 F.3d 758, 768–69 (9th Cir. 2012) (citing *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011)

12   (when a state court decision is ambiguous, and so it is "a close question" on whether the state

13   court denied a petitioner's claim on procedural grounds or on the merits, a federal court must

14   presume that the state court adjudicated the claim on the merits)).

15     B.  <u>Ground 1: Invalid Restraint</u>

16        In Ground 1, petitioner alleges that the State never obtained a "judicially-ratified"

17   indictment, and therefore, the State's power to restrain petitioner for the attempted murder

18   charge is invalid. Dkt. 7 at 5. Petitioner contends that this is a violation of his due process rights

19   and that he was "arbitrarily detained." *Id.*

20        In finding Ground 1 lacked merit, the Washington Court of Appeals stated:

21        [Petitioner] argues that the trial court lacked jurisdiction because there was no
          judicial determination made of probable cause for the attempted second degree
22        murder charge. Smith was arrested on June 3, 2013. A judge found probable cause
          for the crime of second degree assault on June 4, 2013, within the required 48 hours
23        under CrR 3.2.1. Smith appears to contend that an additional judicial determination
          of probable cause was required when the State amended its complaint in December

24

1    2013 to add a charge of attempted second degree murder. He does not cite any
2    competent authority requiring such an additional judicial determination of probable
     cause for an added charge. Nor does he cite any competent authority that the lack
3    of such an additional judicial determination of probable cause deprives the trial
     court of jurisdiction.

4    Dkt. 16-3 at 315.

5        Petitioner appears to argue that the trial court lacks jurisdiction because the trial court

6    failed to make a probable cause finding when the original information was amended to add the

7    attempted murder charge. Dkt. 7 at 5. "CrR 2.1 provides that a criminal proceeding is

8    commenced when the State files an *initial* pleading either by indictment or information. From the

9    time an action is commenced, the superior court acquires jurisdiction." *State v. Barnes*, 146

10   Wash. 2d 74, 81 (2002) (internal citations and quotations omitted). Washington state law

11   requires "a judicial determination of probable cause no later than 48 hours following the person's

12   arrest, unless probable cause has been determined prior to such arrest." CrR 3.2.1(a). This

13   determination is made at the defendant's preliminary appearance. CrR 3.2.1(e).

14       The state court record shows that petitioner was arrested on June 3, 2013 on a charge of

15   second-degree assault. *See* Dkt. 16-3 at 217, 220. On June 4, 2013, less than 48 hours after

16   petitioner's arrest, a judge determined probable cause existed for petitioner's arrest. *Id*. at 221,

17   224. On December 10, 2013, the prosecuting attorney filed an amended information. Dkt. 16-4 at

18   211-14. In the amended information, petitioner was charged with attempted murder in the first

19   degree. *Id*. at 211. The prosecuting attorney filed a second amended information on October 7,

20   2014; the second amended information included counts of attempted murder in the first degree

21   and attempted murder in the second degree. *Id*. at 216-17.

22       The record shows that petitioner received a judicial determination of probable cause

23   within 48 hours of his arrest. Under state law, the trial court acquired jurisdiction over petitioner.

24

1    Petitioner fails to show that the amended information impacted the trial court's jurisdiction.

2    Rather, petitioner's prosecution by amended information without a judicial determination of

3    probable cause is not a violation of the federal constitution. The Court concludes that the state

4    court's determination that petitioner's rights were not violated when petitioner was tried by an

5    amended information without an additional probable cause hearing was not contrary to, or an

6    unreasonable application of, clearly established federal law.

7          To the extent that petitioner attempts to argue that federal law is violated because

8    Washington state law does not entitle him to indictment by a grand jury, "[p]rosecution by

9    information instead of by indictment is provided for by the laws of Washington. This is not a

10   violation of the Federal Constitution." *Gaines v. State of Washington*, 277 U.S. 81, 86 (1928)

11   (citing *Hurtado v. California*, 110 U. S. 516 (1884)). "[A] judicial hearing is not [a] prerequisite

12   to prosecution by information." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Moreover, the Fifth

13   Amendment Grand Jury Clause, which guarantees indictment by grand jury in federal

14   prosecutions, was not incorporated by the Fourteenth Amendment to apply to the states. *See,*

15   *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972) (noting that "indictment by grand jury is

16   not part of the due process of law guaranteed to state criminal defendants by the Fourteenth

17   Amendment"); see also, *Rose v. Mitchell*, 443 U.S. 545, 557 n. 7 (1979); *Gerstein v. Pugh*, 420

18   U.S. 103, 118-119 (1975); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Beck v.*

19   *Washington*, 369 U.S. 541, 545 (1962); *Gaines v. Washington*, 227 U.S. 81, 86 (1928). Thus,

20   petitioner was not entitled to an indictment by a grand jury.

21         Accordingly, the Court finds that Ground 1 should be denied.

22

23

24

1    C.  Ground 2: Exculpatory Evidence

2        In Ground 2, petitioner alleges that his rights were violated under *Brady v. Maryland*, 373

3    U.S. 83 (1963). Dkt. 7 at 7. Petitioner asserts that the prosecution fabricated audio evidence

4    "upon which petitioner's imprisonment hangs." *Id*. Petitioner asserts *Brady* requires the release

5    of public information and exculpatory evidence related to police fabricating information to get

6    false convictions. *Id*.

7        Respondent argues that petitioner is raising a claim under *Napue v. Illinois*, 260 U.S. 264

8    (1959) because the prosecution knowingly presented false evidence at trial. Dkt. 15 at 20-23.

9    However, petitioner specifically states that he is raising a *Brady* claim based on the State's

10   failure to disclose the fabricated information, not a claim based on presenting false information.

11   *See* Dkt. 7 at 7. As petitioner has alleged a *Brady* claim, the Court will analyze his claim under

12   the *Brady* standard.

13       A prosecutor has an affirmative duty to disclose evidence favorable to a defendant. *Kyles v.*

14   *Whitley*, 514 U.S. 419, 432 (1995). In *Brady*, the Supreme Court held "the suppression by the

15   prosecution of evidence favorable to an accused upon request violates due process where the

16   evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

17   the prosecution." 373 U.S. at 87. "There are three components of a *Brady* violation: 'The evidence

18   at issue must be favorable to the accused, either because it is exculpatory, or because it is

19   impeaching; that evidence must have been suppressed by the State, either willfully or

20   inadvertently; and prejudice must have ensued.'" *United States v. Price*, 566 F.3d 900, 907 (9th

21   Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

22       To determine if the suppressed evidence is material, "the question is whether admission of

23   the suppressed evidence would have created a reasonable probability of a different result, so the

24

1    defendant must show only that the government's evidentiary suppression undermines confidence

2    in the outcome of the trial." *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011), *as*

3    *amended* (citation and internal quotation marks omitted). "To determine whether prejudice exists,

4    we look to the materiality of the suppressed evidence." *Id.* The duty to disclose is limited to

5    material evidence favorable to the defense which is deemed to be in the prosecutor's possession,

6    custody, or control. *Kyles*, 514 U.S. at 437-38. However, "the prosecutor's duty to disclose under

7    *Brady* is limited to evidence a reasonable prosecutor would perceive at the time as being material

8    and favorable to the defense. *Woods v. Sinclair*, 764 F.3d 1109, 1127 (9th Cir. 2014).

9           Petitioner alleges that the prosecution was aware the voice mail recording ("the recording")

10    of the assault and attempted murder was falsified and failed to provide this information to

11    petitioner. Dkt. 7, 17. As discussed in the factual background, portions of the assault and attempted

12    murder were recorded on petitioner's cell phone. Petitioner contends that the recording, which was

13    presented at trial, was falsified and, without the recording, he would not have been convicted. Dkt.

14    7, 17.

15           The Washington Court of Appeals found that petitioner did not present sufficient,

16    competent evidence to warrant a hearing on his claim that the recording was doctored and

17    dismissed his claim as frivolous. Dkt. 16-3 at 316.

18           To support Ground 2, petitioner has submitted numerous documents and allegations that

19    the documents show fraudulent conduct by police officers. *See* Dkt. 17. However, petitioner has

20    not submitted credible evidence showing that the prosecution had possession, custody, or control

21    of evidence showing the recording was falsified and that any such information was not provided to

22    petitioner.

23

24

REPORT AND RECOMMENDATION - 12

1    The record contains a letter from Terry F. Hamel, an Audio Engineer with technical

2    expertise in "setup, recording, and processing of audio for live and pre-recorded music, live stage

3    performances, audio books and stories, and talk shows." Dkt. 16-2 at 188; *see also* Dkt. 17 at 48-

4    49. Mr. Hamel states that he is "confident the recording presented to [him] is a compilation of

5    more than one recording." Dkt. 16-2 at 188. Petitioner also attached an email from an individual

6    named Jamie Jackson to the prosecutor, which was apparently written during petitioner's trial.

7    Dkt. 16-3 at 140. Ms. Jackson stated that she was present in the courtroom when the recording

8    was played and she believes that there were differences in the courtroom playback compared to

9    when she heard the recording two months earlier. *Id.* However, it is unclear whether Mr. Hamel

10   or Ms. Jackson have any experience or expertise in analyzing recordings. Further, there is no

11   evidence showing that the recording presented to Ms. Jackson two months before trial or to Mr.

12   Hamel was the recording possessed by the prosecution and used at trial.

13   Moreover, the evidence shows that petitioner was aware of the essential facts regarding

14   any alleged fabrication of the recording prior to trial. Petitioner moved to suppress the recording

15   prior to trial. *See* Dkt. 16-1 at 957-65, 1153. There is also evidence that petitioner's counsel had

16   a different version of the recording prior to trial than the recording that was allegedly played

17   during the trial. *See* Dkt. 16-2 at 87. Thus, the record shows the recording was disclosed to

18   petitioner, and petitioner had the opportunity to discover alterations to the recording and cross-

19   examine the witnesses regarding any fabrication of the recording played at trial. *See Cunningham*

20   *v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013) (quotation and citation omitted) ("Under *Brady*'s

21   suppression prong, if the defendant is aware of the essential facts enabling him to take advantage

22   of any exculpatory evidence, the government's failure to bring the evidence to the direct

23   attention of the defense does not constitute suppression.). Additionally, the prosecutor's decision

24

1    to play portions of the recording or have a separate recording containing portions of the recording

2    does not show the recording was fabricated nor constitute a *Brady* violation.

3         Petitioner has failed to show that the recording was falsified or that the prosecution was

4    aware of any alleged falsification and failed to provide that information to petitioner. *See*

5    *Runningeagle v. Ryan*, 686 F.3d 758, 769 (9th Cir. 2012) ("[T]o state a *Brady* claim, [petitioner] is

6    required to do more than 'merely speculate'"); *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000)

7    (rejecting a *Brady* claim, in part, because the petitioner's arguments were speculative). Therefore,

8    the Court concludes that the state court's determination that petitioner failed to show a *Brady*

9    violation was not contrary to, or an unreasonable application of, clearly established federal law.

10   Accordingly, the Court finds that Ground 2 should be denied.

11        D.   Grounds 3 and 4

12        It is not clear that petitioner raised Grounds 3 or 4 to the highest state court. *See* Dkt. 15,

13   16. However, "[a]n application for a writ of habeas corpus may be denied on the merits,

14   notwithstanding the failure of the applicant to exhaust the administrative remedies available in

15   the courts of the State." 28 U.S.C. § 2254(b)(2).

16             *1.   Ground Three: Theft of Liberty*

17        In Ground 3, petitioner alleges that the Vancouver Police Department ("VPD")

18   unlawfully acquired petitioner's phone 38 minutes before the assault and attempted murder

19   occurred. Dkt. 7 at 8.

20        Habeas relief may be granted "only on the ground that [petitioner] is in custody in

21   violation of the constitution or laws or treaties of the United States." *Wilson v. Corcoran*, 562

22   U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Here, petitioner does not allege that his

23   constitutional rights have been violated by the VPD's allegedly unlawful acquisition of his

24

1   phone. Petitioner fails to state how the alleged facts indicate a violation of any constitutional

2   provision, and Ground 3 does not appear to implicate the federal constitution. Petitioner's

3   allegation that the prosecution failed to present exculpatory evidence with respect to the

4   recording has been addressed with respect to Ground 2. Thus, to the extent that petitioner

5   challenges the acquisition of his phone, he does not state a cognizable basis for federal habeas

6   relief. *See James v. Borg,* 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not

7   supported by a statement of specific facts do not warrant habeas relief.").

8       Furthermore, petitioner has not provided sufficient evidence to show that his cell phone

9   was obtained prior to the assault and attempted murder. The record contains a document entitled

10  "Chain of custody report." Dkt. 16-2 at 161; *see also* Dkt. 17 at 64. The report states that a cell

11  phone was logged on the report at 10:31:52 P.M. on June 2, 2013. Dkt. 16-2 at 161. It appears

12  that the victim called 911 at 11:18 P.M. on June 2, 2013. Dkt. 16-1 at 408. Thus, there is a

13  discrepancy between the chain of custody report, when the assault occurred, and when the victim

14  called 911. However, there is no indication that the "cell phone" listed on the chain of custody

15  report is petitioner's cell phone. *See* Dkt. 16-2 at 161. Further, there is no explanation regarding

16  how this report is created and what the dates and times mean. *See id*. Moreover, evidence

17  presented during a hearing and at trial showed that Officer Ly Yong took possession of

18  petitioner's phone at the hospital after the victim had been transported to the hospital following

19  the assault and attempted murder. *See* Dkt. 16-1 at 67-78, 525-28. The trial court also determined

20  that there was probable cause to obtain a search warrant to search petitioner's phone after Officer

21  Yong heard the voice mail and took possession of the phone. Dkt. 16-1 at 96-100, 1043-46.

22  Petitioner does not challenge the trial court's ruling. *See* Dkt. 7. Based on the record before the

23  Court, petitioner has not provided adequate evidence to show his phone was unlawfully obtained

24

1    prior to, or after, the assault and attempted murder in an effort to fabricate a voice mail

2    recording.

3        Petitioner also contends that the VPD used the phone to violate the Computer Fraud and

4    Abuse Act ("CFAA") by fabricating the voice mail recording after they unlawfully confiscated

5    his phone. Dkt. 7 at 8. Petitioner does not provide adequate evidence to support this contention,

6    nor does he explain how this is a violation of his federal constitutional rights. Moreover, the

7    CFAA "does not prohibit any lawfully authorized investigative, protective, or intelligence

8    activity of a law enforcement agency of . . . a State[.]" 18. U.S.C. § 1030. The trial court

9    determined that petitioner's phone was lawfully seized and searched. Therefore, petitioner has

10   not shown VPD violated the CFAA or that he is entitled to federal habeas relief based on an

11   alleged violation of the CFAA.

12       In sum, Ground 3 fails to state a cognizable federal habeas claim. Further, petitioner has

13   not shown that his phone was unlawfully obtained by the VPD prior to, or after, the assault and

14   attempted murder leading to the fabrication of a voice mail recording. Accordingly, the Court

15   finds Ground 3 should be denied.

16           *2. Ground 4: Actual Innocence*

17       In Ground 4, petitioner alleges that he is actually innocent of the convicted crimes. Dkt. 7

18   at 10.

19       The Supreme Court has not recognized actual innocence as a stand-alone habeas claim.

20   *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("[A] claim of 'actual innocence' is not itself a

21   constitutional claim, but instead a gateway through which a habeas petitioner must pass to have

22   his otherwise barred constitutional claim considered on the merits."); *Dist. Attorney's Office for

23   Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) (whether a federal right to be released

24

1    upon proof of actual innocence exists is an open question). As recently as 2013, the Supreme

2    Court has observed: "We have not resolved whether a prisoner may be entitled to habeas relief

3    based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931

4    (2013).

5            The Ninth Circuit has not resolved the issue, but assumed that a freestanding claim of

6    actual innocence based on newly discovered evidence may be viable in the context of a non-

7    capital case. *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved

8    whether a freestanding actual innocence claim is cognizable in a federal habeas corpus

9    proceeding in the non-capital context, although we have assumed that such a claim is viable.").

10   Where an actual innocence claim has been filed, Supreme Court and Ninth Circuit case law

11   "support the practice of first resolving whether a petitioner has made an adequate evidentiary

12   showing of actual innocence before reaching the constitutional question of whether freestanding

13   innocence claims are cognizable in habeas." *Osborne v. Dist. Attorney's Office for Third Judicial*

14   *Dist.*, 521 F.3d 1118, 1131 (9th Cir. 2008) *rev'd and remanded on other grounds,* 557 U.S. 52

15   (2009) (citing *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997); *Herrera*, 506 U.S. at 442-

16   44; *House v. Bell,* 547 U.S. 518 (2006)) (other citation omitted).

17           Here, even assuming such a claim is cognizable, petitioner has not presented new,

18   reliable evidence demonstrating that he is innocent. Rather, it appears that petitioner has simply

19   repackaged the information and evidence that was available at trial. *See Sadler v. Bullard*, 2019

20   WL 3021422, at *5 (W.D. Wash. June 7, 2019) (finding no freestanding actual innocence claim

21   where the petitioner presented no new evidence, but merely repackaged information and

22   evidence he presented at trial). To support his claim, petitioner has provided documents

23   including medical records, police records, laboratory reports, and an audio recording analysis.

24

1    Dkt. 17. Petitioner also appears to have filed a detailed interpretation of the evidence presented at

2    trial. *Id*. Petitioner essentially presents a list of evidence that he claims is deficient. However,

3    petitioner's documentation provides, at most, a different interpretation of the evidence than that

4    found by the trial court. However, petitioner has not shown he did not commit the crimes of

5    second-degree assault and attempted second-degree murder. Rather, petitioner attempts to

6    challenge the sufficiency of the evidence produced at his trial. "Evidence that merely undercuts

7    trial testimony or casts doubt on the petitioner's guilt, but does not affirmatively prove

8    innocence, is insufficient to merit relief on a freestanding claim of actual innocence." *Jones*, 763

9    F.3d at 1251.

10          Accordingly, petitioner has not shown, nor does the Court find, the evidence is sufficient

11    to meet the actual innocence standard. The Court finds that Ground 4 should be denied.

12    **III.     Evidentiary Hearing**

13          The decision to hold an evidentiary hearing is committed to the Court's discretion.

14    *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

15    hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

16    entitle the applicant to federal habeas relief." *Id*. at 474. In determining whether relief is

17    available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

18    state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

19    entitle petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

20    record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

21    court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to

22    hold an evidentiary hearing because, as discussed in this report and recommendation, petitioner's

23    grounds for relief may be resolved on the existing state court record.

24

**IV.    Certificate of Appealability**

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of petitioner's claims or would conclude the issues presented in the petition should proceed further. Therefore, the Court concludes that petitioner is not entitled to a certificate of appealability with respect to the petition.

**V.    Conclusion**

For the above stated reasons, the Court concludes that the petition should be denied. Petitioner has not shown that the state courts' adjudication of Grounds 1 and 2 was contrary to, or an unreasonable application of, clearly established federal law. Further, the Court finds Grounds 3 and 4 fail to state cognizable federal habeas claims. The Court also finds that an evidentiary hearing is not necessary. Therefore, the Court recommends that the petition be denied and a certificate of appealability not be issued.

As the Court finds a certificate of appealability should not be issued and that the petition should not proceed further, the Court recommends any request for *in forma pauperis* on appeal be denied.

The Court also recommends all pending motions (*see* Dkt. 39) be denied as moot.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 5, 2020, as noted in the caption.

Dated this 11th day of May, 2020.


J. Richard Creatura
United States Magistrate Judge